**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 30, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ALEJANDRO RAY WILLIAMS, a/k/a Ray,

      Defendant - Appellant.

No. 11-3136
(D.C. No. 2:10-CR-20062-KHV-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HOLLOWAY** and **MATHESON**, Circuit Judges.

In 2010, Alejandro R. Williams was indicted on eight federal drug charges after he sold crack cocaine to a confidential informant and a police officer on several occasions. Mr. Williams pled not guilty and proceeded to trial. A jury found him guilty on all eight counts of the indictment. The U.S. District Court for the District of Kansas sentenced Mr. Williams to 235 months of imprisonment.

In this direct appeal, Mr. Williams challenges his conviction and sentence. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1), we affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.   BACKGROUND

### A. *The Controlled Drug Purchases*

On July 16, 2009, Carmen Grimm, a confidential informant working with the U.S. Drug Enforcement Administration ("DEA"), called Mr. Williams and arranged to purchase crack cocaine from him.  Ms. Grimm went to Mr. Williams's home and met him in his driveway.  Mr. Williams sold Ms. Grimm 11.9 grams of crack cocaine.

On July 30, 2009, Ms. Grimm again called Mr. Williams and asked to purchase crack cocaine.  Ms. Grimm went to Mr. Williams's home and met him in his driveway. Mr. Williams sold Ms. Grimm 12.9 grams of crack cocaine.[1]

On August 14, 2009, Pamela Bennett, a Kansas City police officer assigned to a DEA task force, called Mr. Williams and asked to purchase crack cocaine from him. During the call, Officer Bennett told Mr. Williams that she was Ms. Grimm's friend.  Mr. Williams told Officer Bennett to meet him at his home.  When Officer Bennett arrived at Mr. Williams's home, she pulled into Mr. Williams's driveway.  An unknown man ("Mr. X") approached Officer Bennett's vehicle and asked her whether she had called.  Officer Bennett told Mr. X that she had called, and Mr. X sold her 13.7 grams of crack cocaine. During the transaction, Officer Bennett saw Mr. Williams on the front porch of his residence.

On September 11, 2009, Officer Bennett again called Mr. Williams and arranged to purchase crack cocaine.  Officer Bennett drove to Mr. Williams's home and pulled into

---

[1]Ms. Grimm testified about her role and was identified by name at trial in open court and also was named in both parties' briefs, which were not filed under seal.

the driveway. Mr. X again approached Officer Bennett's vehicle and sold her 11.7 grams of crack cocaine. During this transaction, Officer Bennett again saw Mr. Williams on his front porch.

On September 18, 2009, Officer Bennett called Mr. Williams and arranged to purchase crack cocaine from him. Officer Bennett drove to Mr. Williams's home and pulled into the driveway. Mr. Williams got into Officer Bennett's vehicle and sold her 11.6 grams of crack cocaine.

On September 29, 2009, Officer Bennett arranged another drug deal with Mr. Williams. When Officer Bennett arrived at Mr. Williams's home, Mr. X approached her vehicle. Mr. X told Officer Bennett that Mr. Williams wanted her to avoid referring to specific drug quantities during her telephone conversations with Mr. Williams. Mr. X then sold Officer Bennett 12.4 grams of crack cocaine.

On November 23, 2009, Officer Bennett called Mr. Williams and arranged to purchase crack cocaine from him. When Officer Bennett arrived at Mr. Williams's home, Mr. Williams called her and told her he was waiting for someone to bring him more crack cocaine. While Officer Bennett waited in Mr. Williams's driveway, another vehicle arrived. Mr. Williams exited his home and spoke with the people in the second vehicle. He then approached Officer Bennett and sold her 6.4 grams of crack cocaine.

**B.** *The Indictment*

On April 22, 2010, a federal grand jury indicted Mr. Williams on eight drug-related felonies. Count One of the indictment is the only count relevant to this appeal.

Count One charged that from July 1, 2009 through December 30, 2009, Mr. Williams "did knowingly and unlawfully combine, conspire, and agree . . . with other persons . . . to distribute and possess with intent to distribute 50 grams or more of . . . cocaine base ('crack cocaine'), a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(iii)."  ROA, Vol. 1, at 10.

**C. *Mr. Williams's Trial***

On July 12, 2010, Mr. Williams pled not guilty to the eight counts and requested a jury trial.  His trial began on January 18, 2011.

**1.  *The Government's Case-in-Chief***

During its case-in-chief, the Government presented testimony from Ms. Grimm and Officer Bennett about the controlled drug purchases at Mr. Williams's residence. The Government also presented testimony from Cassandra Darveaux, a drug user who purchased crack cocaine from Mr. Williams on several occasions.

Ms. Darveaux stated that from July 2009 through December 2009, she purchased crack cocaine from Mr. Williams 19 to 24 times.  Ms. Darveaux arranged each purchase by calling Mr. Williams on his telephone.  On most occasions, Mr. Williams met Ms. Darveaux and sold her crack cocaine.  However, on some occasions, the crack cocaine as delivered by Mr. X.[2]  During each of these transactions, Mr. X sold Ms. Darveaux either 3.5 or 7 grams of crack cocaine.[3]

---

[2]At oral argument, Mr. Williams's counsel suggested that the unidentified man who delivered crack cocaine to Ms. Darveaux may not have been the same unidentified man who delivered crack cocaine to Officer Bennett.  But in his opening brief, Mr. Williams states that "Mr. Williams and Mr. X jointly participated in" three sales to

## 2. *Mr. Williams's Motion for Judgment of Acquittal*

After the Government finished presenting its case-in-chief, Mr. Williams moved for a judgment of acquittal on Count One. He argued that a judgment of acquittal was appropriate because the Government had not proved that he conspired to distribute 50 grams or more of crack cocaine as alleged in Count One of the indictment. The district court denied Mr. Williams's motion.

## 3. *The Jury Instructions*

After the parties' closing arguments, the district court conducted a jury instructions conference. During the conference, the parties discussed whether the jury instruction concerning Count One would include the 50-gram-or-more drug quantity alleged in the indictment as an element of the offense. The district court proposed omitting the drug quantity as an element in the jury instruction but requiring the jury to make a quantity determination on a special verdict form. Mr. Williams objected, contending that the 50-gram quantity was an essential element that the jury needed to be instructed on. The district court overruled his objection.

## 4. *The Jury's Verdict*

---

Officer Bennett and two sales to Ms. Darveaux. Aplt. Br. at 14-15. In either case, Ms. Darveaux and Officer Bennett purchased from someone distributing drugs in concert with, and therefore conspiring with, Mr. Williams.

[3]Ms. Darveaux testified that during the sales involving Mr. X, she purchased "one to two 8-balls" of crack cocaine. ROA, Vol. 2, at 97. An "8-ball" is one-eighth of an ounce of crack cocaine. *See United States v. Payton*, 405 F.3d 1168, 1171 n.2 (10th Cir. 2005). One-eighth of an ounce is approximately 3.5 grams.

After the scheduling conference, the district court submitted the case to the jury. During its deliberations, the jury sent the district court judge a note asking whether it could convict Mr. Williams on Count One without making a finding regarding drug quantity. The judge instructed the jury that it could convict Mr. Williams on Count One without reaching a unanimous conclusion that Mr. Williams possessed 50 grams or more of crack cocaine.

On January 19, 2011, the jury found Mr. Williams guilty on all eight counts alleged in the indictment. On its special verdict form, the jury indicated that it had found beyond a reasonable doubt that Mr. Williams conspired to possess with intent to distribute 50 grams or more of crack cocaine.

### 5. *Mr. Williams's Sentence*

In anticipation of Mr. Williams's sentencing hearing, the U.S. Department of Probation prepared a presentence investigation report ("PSR"). The PSR recommended that Mr. Williams be held responsible for distributing 2,720 grams of crack cocaine. The PSR's recommended drug quantity was based on both offense conduct and relevant non-offense conduct. The relevant non-offense conduct involved several drug deals from 2002 through 2007 in which Mr. Williams sold crack cocaine to Sandra Glenn, a drug user.[4] The PSR indicated that during this period, Mr. Williams had sold Ms. Glenn 2,300 grams of crack cocaine.

---

[4]In his opening brief, Mr. Williams concedes that even though the transactions involving Ms. Glenn occurred two years before the conduct for which he was convicted, they could be considered in the district court's sentencing calculation. Aplt. Br. at 30 ("Under previous decisions of the Tenth Circuit, the sales to [Ms.] Glenn, although

The PSR also recommended that Mr. Williams's offense level be enhanced by two levels under Section 3B1.1(c) of the United States Sentencing Guidelines (the "Guidelines") because of his managerial role in the drug conspiracy. Based on a drug quantity of 2,720 grams and the two-level enhancement under Section 3B1.1(c), the PSR determined that Mr. Williams's total offense level was 36. This offense level, together with Mr. Williams's criminal history category of III, yielded an advisory sentencing range of 235 to 293 months of imprisonment.

Mr. Williams objected to the PSR's recommendations on two grounds. First, he argued that the drug quantity was based largely on information provided by informants who were not credible.[5] Second, he argued that his offense level could not be enhanced by two levels under Section 3B1.1(c) because the Government did not introduce evidence demonstrating that he controlled another person's actions to such a degree as to manage that person.

The district court held a sentencing hearing on May 10, 2011. To support its drug quantity calculation, the Government presented testimony from Ms. Glenn. Ms. Glenn stated that she met Mr. Williams in 2003 and purchased crack cocaine from him on a regular basis until 2007. During cross-examination, Ms. Glenn stated that Mr. Williams had sold her approximately 1,300 grams of crack cocaine, rather than the 2,300 grams alleged in the PSR. Mr. Williams's counsel conceded that Ms. Glenn's testimony could

occurring more than two years prior to the commencement of the offense of conviction, would be considered part of the same course of conduct.").

[5]Mr. Williams has not asserted this argument on appeal.

support a drug quantity calculation of 1,300 grams and that Mr. Williams's base offense level would be 34 regardless of whether he sold Ms. Glenn 1,300 or 2,300 grams of crack cocaine.

Based on this concession, the district court found that Mr. Williams's prior objection to the PSR's recommended drug quantity was moot. The district court then overruled Mr. Williams's objection to the two-level enhancement under Section 3B1.1(c), stating:

> [O]n at least three occasions, Officer . . . Bennett spoke with [Mr. Williams] on the telephone to arrange purchases of [crack cocaine] and another individual at his residence actually engaged in the transaction with her. . . . [During] the third transaction, the individual instructed [Officer] Bennett not to mention names or weights during her telephone conversations with [Mr. Williams] and . . . basically orchestrated the transaction through or on behalf of Mr. Williams.
>
> [Mr. Williams] used this other individual to distance himself from the sale and [to] basically act as a buffer and someone to negotiate the details of how the transaction would occur. I think this is exactly what the management enhancement is intended to address . . . .

ROA, Vol. 2, at 233.

After concluding that the PSR accurately calculated Mr. Williams's total offense level as 36, the district court sentenced Mr. Williams to 235 months of imprisonment on Counts One through Eight, to run concurrently.

On May 11, 2011, Mr. Williams filed a timely notice of appeal challenging his conviction and sentence.

## II. DISCUSSION

On appeal, Mr. Williams asserts four claims of error concerning his conviction and sentence. First, he contends that the evidence presented at trial was insufficient to prove that he conspired to distribute 50 grams or more of crack cocaine and that the 50-gram-or-more quantity was an essential element of the offense charged in Count One. Second, he argues that the district court erred by failing to instruct the jury that drug quantity was an essential element of Count One. Third, he contends that the district court erred by applying a two-level enhancement under Section 3B1.1(c) of the Guidelines because the Government did not prove that he acted as a leader or manager in the drug conspiracy. Finally, Mr. Williams argues that the district court violated his rights under the Sixth Amendment by sentencing him based on a drug quantity determined by the district court judge under a preponderance of the evidence standard.

We address each of Mr. Williams's arguments in turn.

### A. *Sufficiency of the Evidence*

Mr. Williams first argues that his conviction on Count One must be vacated because the Government failed to present sufficient evidence to prove he conspired to distribute 50 grams or more of crack cocaine, which he contends is an essential element of his conviction on Count One.

We have explained that "our restrictive standard of review for a sufficiency of the evidence question provides us with very little leeway." *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007) (quotations omitted). Although "[w]e review de novo whether the government presented sufficient evidence to support a conviction," *id.*

(quotations omitted), we must "view[] the evidence in the light most favorable to the prosecution," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In so doing, "[w]e will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury. Rather, our role is limited to determining whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom." *Sells*, 477 F.3d at 1235 (quotations omitted). We will reverse a conviction based on insufficient evidence only if "after viewing the evidence in the light most favorable to the prosecution, [we conclude that no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

The jury convicted Mr. Williams of conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 846,[6] 841(a)(1),[7] and 841(b)(1)(A)(iii) (2009).[8] *See* ROA, Vol. 1, at 51. To prove a conspiracy in violation of 21 U.S.C. § 846, "[t]he government must prove beyond a reasonable doubt

---

[6]Title 21 U.S.C. § 846 provides that a person who conspires to commit a federal drug crime shall be subject to the same penalties as those prescribed for the crime that was the object of the conspiracy.

[7]Title 21 U.S.C. § 841(a)(1) makes it a criminal offense to "knowingly or intentionally . . . possess with intent to . . . distribute . . . a controlled substance." Crack cocaine is a Class II controlled substance.

[8]The version of 21 U.S.C. § 841(b)(1)(A)(iii) applicable to Mr. Williams provides that the maximum sentence for an offense involving 50 grams or more of crack cocaine is life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2009).

- 10 -

(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." *United States v. Dozal*, 173 F.3d 787, 797 (10th Cir. 1999) (quotations omitted).

Mr. Williams does not dispute that the Government introduced sufficient evidence to satisfy the second, third, and fourth elements necessary to sustain a conviction for conspiracy. And Mr. Williams concedes that the jury could rationally infer that he agreed with another person to violate the law by distributing crack cocaine from the evidence that "customers call[ed] Mr. Williams to order narcotics and [that] Mr. X deliver[ed] the narcotics." Aplt. Br. at 13. But Mr. Williams argues that this evidence was not sufficient to prove the first element of his conviction on Count One. Specifically, Mr. Williams contends that because the object of the conspiracy alleged in the indictment was the distribution of 50 grams or more of crack cocaine, the Government was required to prove that he and another person or persons agreed to distribute at least 50 grams of crack cocaine.

In response, the Government argues that the evidence introduced at trial supported the jury's finding that Mr. Williams conspired to distribute 50 grams or more of crack cocaine.[9] We agree.

_____

[9]The Government also argues that, even if it did not prove the 50-gram quantity, Mr. Williams's conviction on Count One should not be vacated because drug quantity was not an essential element of his offense of conviction. Because we conclude that the evidence supported the jury's finding that Mr. Williams agreed to distribute 50 grams or more of crack cocaine, we need not and do not address whether drug quantity was an essential element of Mr. Williams's conviction on Count One. Thus, for purposes of this

- 11 -

At trial, Officer Bennett testified that she purchased crack cocaine from Mr. X on three separate occasions and that she had arranged each purchase by contacting Mr. Williams. She further testified that the total quantity of crack cocaine purchased during the three transactions was 37.8 grams.

Additionally, Ms. Darveaux testified that on two occasions, she arranged to purchase crack cocaine from Mr. Williams and that the crack cocaine was delivered by Mr. X.[10] Ms. Darveaux testified that during these transactions, she purchased 3.5 to 7 grams of crack cocaine from Mr. X.[11]

Viewing this evidence in the light most favorable to the Government, we cannot say that that no jury could have found beyond a reasonable doubt that Mr. Williams

---

opinion, we assume, without deciding, that drug quantity was an essential element of Mr. Williams's conviction on Count One.

[10]Ms. Darveaux initially testified that she purchased crack cocaine from Mr. X four or five times, but later testified that she may have purchased crack cocaine from Mr. X only two times. In his opening brief, Mr. Williams concedes that the evidence introduced at trial demonstrated that Ms. Darveaux purchased crack cocaine from Mr. X, or "a person other than Mr. Williams[,] on two occasions." Aplt. Br. at 14 n.8; *see also id.* at 14-15.

[11]In his opening brief, Mr. Williams contends that "[Ms.] Darveaux stated that she alternately purchased 3.5 and 7 gram quantities." Aplt. Br. at 14 n.8. Mr. Williams therefore asserts that Ms. Darveaux's testimony "was that she purchased 10.5 grams of [crack] cocaine . . . from Mr. Williams and another person acting jointly." *Id.* But Ms. Darveaux did not state that she alternately purchased 3.5 and 7 gram quantities during the transactions with Mr. X. Rather, Ms. Darveaux testified that she purchased "[a] couple of 8-balls," ROA, Vol. 2, at 96, or "[o]ne to two 8-balls," *id.* at 97. As noted above, two "8-balls" is approximately 7 grams of crack cocaine. *See Payton*, 405 F.3d at 1171 n.2.

agreed with another person or persons to distribute 50 grams or more of crack cocaine.[12] Based on Ms. Darveaux's testimony that she purchased up to seven grams of crack cocaine from Mr. X on at least two occasions, the jury reasonably could have found that Ms. Darveaux purchased 14 grams of crack cocaine from Mr. X. Adding this quantity to the 37.8 grams that Mr. X sold to Officer Bennett, the jury reasonably could have concluded that Mr. Williams and Mr. X agreed to distribute at least 51.8 grams of crack cocaine.

Because the Government introduced sufficient evidence to prove that Mr. Williams conspired to distribute 50 grams or more of crack cocaine, we reject Mr. Williams's claim that the Government failed to introduce sufficient evidence to sustain his conviction on Count One.

**B.** *The Jury Instructions*

In his second claim of error, Mr. Williams argues that the district court erred in failing to instruct the jury that drug quantity was an essential element of Count One.

"[W]e review de novo a district court's jury instructions as a whole and view them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Sierra-Ledesma*, 645 F.3d 1213, 1217 (10th Cir. 2011) (quotations omitted), *cert. denied*, 132 S. Ct. 435 (2011).

---

[12]The Government has not argued that the crack cocaine that Mr. Williams sold to Ms. Grimm—the confidential informant working with the DEA—should be considered in determining whether it proved that Mr. Williams conspired to distribute 50 grams or more of crack cocaine. We have therefore focused our analysis of this issue on the quantity of cocaine that Mr. Williams and Mr. X jointly distributed.

The Supreme Court has explained that the Fifth and Sixth Amendments to the U.S. Constitution "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 510 (1995). But the Court has also explained that "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder v. United States*, 527 U.S. 1, 9 (1999). Thus, "when a defendant protests the omission of an element [in a jury instruction], we must decide whether that error is harmless." *Sierra-Ledesma*, 645 F.3d at 1217; *see also Neder*, 527 U.S. at 15 ("[T]he omission of an element [in a jury instruction] is an error that is subject to harmless-error analysis . . . ."). An error is deemed harmless when "it appears beyond a reasonable doubt that the error . . . did not contribute to the verdict obtained." *Neder*, 527 U.S. at 15 (quotations omitted).

The district court denied Mr. Williams's request to instruct the jury that the 50-gram-or-more quantity was an element of Count One. But the district court submitted the issue of drug quantity to the jury by way of a special verdict form, and the jury indicated on the form that it had found beyond a reasonable doubt that Mr. Williams conspired to distribute or possess with intent to distribute 50 grams or more of crack cocaine.

We need not decide whether the district court erred by omitting drug quantity as an element in the instruction concerning Count One because we conclude, based on the unique facts of this case, that such error would be harmless. *Cf. United States v. Robertson*, 473 F.3d 1289, 1293 n.2 (10th Cir. 2007) (declining to consider whether the

district court erred in omitting an element in a jury instruction because the defendant had failed to demonstrate that the omission prejudiced her). Because the jury found beyond a reasonable doubt that Mr. Williams conspired to distribute more than 50 grams of crack cocaine, and because its finding was supported by sufficient evidence, we conclude that the trial court's omission of drug quantity in its instruction concerning Count One did not affect the verdict. *See United States v. Caldwell*, 589 F.3d 1323, 1333 (10th Cir. 2009). We therefore reject Mr. Williams's claim that the omission of drug quantity in the jury instruction merits reversal of his conviction on Count One.[13]

**C.** *The Leadership Sentencing Enhancement*

In his third claim of error, Mr. Williams argues that the district court erred in enhancing his offense level under Section 3B1.1(c) of the Guidelines.

"In evaluating the application of a Guidelines enhancement, we review factual findings for clear error, but to the extent the defendant asks us to . . . hold that the facts found by the district court are insufficient as a matter of law to warrant an enhancement, we must conduct a de novo review." *United States v. Martinez*, 602 F.3d 1156, 1158 (10th Cir. 2010) (quotations omitted); *see also United States v. Vigil*, 644 F.3d 1114, 1118 (10th Cir. 2011) ("[A]lthough we review the factual findings made by the district court for clear error, we review de novo whether those facts are sufficient to warrant the . . . [e]nhancement.").

_____

[13]Because we conclude that the error alleged by Mr. Williams is harmless, we need not and do not decide whether the 50-gram-or-more drug quantity listed in the indictment was an essential element of Mr. Williams's conviction on Count One.

Section 3B1.1(c) of the Guidelines instructs district courts to increase a defendant's base offense level by two "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one of more of the participants" in criminal activity. USSG § 3B1.1 cmt. n. 2. "These roles are disjunctive, meaning a defendant need only qualify for one of these roles to qualify for an increase in his offense level." *United States v. Snow*, 663 F.3d 1156, 1162 (10th Cir. 2011), *cert. denied*, 132 S. Ct. 1615 (2012).[14]

We have explained that a defendant need not be a drug kingpin to qualify for an enhancement under Section 3B1.1(c). *United States v. Backas*, 901 F.2d 1528, 1530 (10th Cir. 1990). Rather, a defendant "needs merely to give some form of direction or supervision to someone subordinate in the criminal activity for which the sentence is given." *Id.*

For instance, in *United States v. Ivory*, 532 F.3d 1095 (10th Cir. 2008), a federal district court enhanced a defendant's offense level under Section 3B1.1(c) "based . . . on [a confidential informant's] testimony that she called [the defendant] to purchase drugs and [that the defendant] sent [another] person to deliver [the] drugs." *Id.* at 1105. On appeal, the defendant argued that the informant's testimony did not provide

---

[14]The Guidelines suggest that a court consider the following factors in determining whether a defendant qualifies for an enhancement under Section 3B1.1(c): (1) "the exercise of decision making authority," (2) "the nature of participation in the commission of the offense," (3) "the degree of participation in planning or organizing the offense," (4) "the nature and scope of the illegal activity," and (5) "the degree of control and authority exercised over others." USSG § 3B1.1 cmt. n.4.

a basis to apply the Section 3B1.1(c) enhancement because it did not show "the respective roles . . . between [the defendant] and the delivery person." *Id.* (quotations omitted). We rejected the defendant's argument, concluding that the district court "could reasonably believe [the informant's] testimony and find that [the defendant] had directed a subordinate to make the delivery." *Id.*

In support of its decision to enhance Mr. Williams's offense level under Section 3B1.1(c), the district court found that: (1) on three occasions Officer Bennett called Mr. Williams to arrange a transaction but Mr. X actually performed the transaction, (2) Mr. X told Officer Bennett that Mr. Williams wanted her to avoid referring to specific drug quantities during her telephone conversations with Mr. Williams; (3) Mr. X basically orchestrated the transaction through or on behalf of Mr. Williams, and (4) "Mr. Williams used [Mr. X] as a buffer and someone to negotiate the details of how the transactions would occur." Aplt. Br. at 20 (quotations omitted).

Mr. Williams acknowledges that the district court's first, second, and third findings are supported by evidence in the record, but he contends that these findings are insufficient to warrant an enhancement under Section 3B1.1(c). Mr. Williams also argues that the district court clearly erred in finding that he used Mr. X as a "buffer." We need not address whether the district court erred in finding that Mr. Williams used Mr. X as a buffer because we conclude that the court's first three findings support its decision to enhance Mr. Williams's offense level under Section 3B1.1(c).

The district court's first finding—that on three occasions Officer Bennett called Mr. Williams to arrange a transaction but Mr. X actually performed the transaction—is

nearly identical to the finding in *Ivory* that we considered sufficient to warrant application of the Section 3B1.1(c) enhancement. *See Ivory*, 532 F.3d at 1105. Even if this finding were not, alone, sufficient to warrant the enhancement, the district court's second and third findings—that Mr. X instructed Officer Bennett not to use names or weights during her telephone conversations with Mr. Williams and that Mr. X orchestrated the transaction through or on behalf of Mr. Williams—strongly support its conclusion that Mr. Williams participated in a managerial role in the drug conspiracy.

For these reasons, we hold that the district court did not err in enhancing Mr. Williams's offense level under Section 3B1.1(c) of the Guidelines.

### D. *Judicial Fact Finding and the Sixth Amendment*

At sentencing, the district court found by a preponderance of the evidence that Mr. Williams had distributed 1,300 to 2,300 grams of crack cocaine to Ms. Glenn. In his fourth claim of error, Mr. Williams contends that this judicial fact finding significantly increased his advisory sentencing range and thereby violated his rights under the Sixth Amendment. Mr. Williams concedes he did not preserve this claim in the district court.

"[W]hen a defendant fails to preserve an objection to . . . his sentence, we review only for plain error." *United States v. Martinez-Barragan,* 545 F.3d 894, 899 (10th Cir. 2008). "[T]o prevail on plain error review, a party must show there is (1) error, (2) that is plain, (3) which affects the party's substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Poe*, 556 F.3d 1113, 1128 (10th Cir. 2009).

Mr. Williams has failed to satisfy the first element of the plain-error standard. The Supreme Court has consistently recognized that a judge may find facts for sentencing purposes without submitting the facts to the jury as long as the finding does not "increase[] the penalty for a crime beyond the prescribed statutory maximum." *Apprendi* v. *New Jersey,* 530 U.S. 466, 490 (2000); *see also United States v. O'Brien*, 130 S. Ct. 2169, 2174-75 (2010) (noting that "[s]entencing factors . . . can be proved to a judge at sentencing by a preponderance of the evidence," but "judge-found sentencing factors cannot increase the maximum sentence a defendant might otherwise receive based purely on the facts found by the jury"); *Harris v. United States*, 536 U.S. 545, 565 (2002) ("[T]he facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt. . . . The judge may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from those juries—and without contradicting *Apprendi*."). Thus, "it is . . . universally accepted that judge-found facts . . . do not violate the Sixth Amendment" unless they increase a defendant's sentence beyond the prescribed statutory maximum. *United States v. Lauder*, 409 F.3d 1254, 1269 (10th Cir. 2005).

Here, the district court's fact finding did not increase Mr. Williams's sentence beyond the maximum sentence prescribed for a conviction of conspiracy to distribute 50 grams or more of crack cocaine. *See* 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii) (2009). Accordingly, we hold that the district court did not violate Mr. Williams's rights under the Sixth Amendment by relying on drug quantities not found by the jury in determining Mr. Williams's offense level.[15]

---

[15]Even if the district court erred, Mr. Williams has failed to demonstrate that the error was plain. To satisfy the second element of the plain-error test, an appellant must

## III.  CONCLUSION

For the foregoing reasons, we affirm Mr. Williams's conviction and sentence.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge

---

demonstrate that the error was "clear or obvious under current, well-settled law." *United States v. Olano*, 507 U.S. 725, 734 (1993).  Mr. Williams attempts to satisfy this burden by relying on Justice Scalia's concurring opinion in *Gall v. United States*, 552 U.S. 38 (2007), which states that "[t]he door . . . remains open for a defendant to demonstrate that his sentence, whether inside or outside the advisory Guidelines range, would not have been upheld but for the existence of a fact found by the sentencing judge and not by the jury." *Id.* at 60 (Scalia, J., concurring).  But absent a fragmented opinion, a concurring opinion does not create law.  *See Large v. Fremont County*, 670 F.3d 1133, 1142 (10th Cir. 2012) (noting that a concurring opinion "does not establish the controlling law of the land"); *see also Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (quotations omitted)).

Moreover, Mr. Williams concedes in his opening brief that the error he complains of has been determined to be a non-error by this court.  He has therefore acknowledged that the error he alleges was neither clear nor obvious at the time of the district court's decision.

- 20 -