**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 5, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

RAJU C. RICKETT,

        Defendant - Appellant.

No. 11-2165
(D.C. No. 2:10-CR-03158-RB-1)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

---

Defendant-Appellant, Raju C. Rickett, conditionally pleaded guilty to failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a), reserving his right to appeal the district court's denial of his motion to dismiss. On appeal, Mr. Rickett abandons the arguments made in his motion to dismiss. He argues instead that the discretion statutorily granted to the Attorney General to declare the federal Sex Offender Registration and Notification Act ("SORNA" or the "Act"), 42 U.S.C. §§ 16901–16962, applicable to offenders convicted of sex

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

crimes prior to SORNA's enactment date—that is, July 26, 2006—"violate[s] the non-delegation doctrine that flows from Article I, § 1 of the Constitution." Aplt. Opening Br. at 7. Exercising our jurisdiction under 28 U.S.C. § 1291, we **AFFIRM**.

# I

Mr. Rickett was convicted in New Mexico state court in July 1998 of an offense for which SORNA would require registration. On July 20, 2005, Mr. Rickett was also convicted in New Mexico state court for failing to register as a sex offender. This conviction resulted in Mr. Rickett being sentenced to eighteen months' imprisonment—a sentence that ran concurrently with his ninety-month sentence for an April 2006 state conviction for contributing to the delinquency of a minor and conspiracy.

Just before his release in November 2009, Mr. Rickett was notified of his duty to register as a sex offender under New Mexico law; he was not notified of any duty to do so under federal law. Following his release, Mr. Rickett failed to register both in El Paso, Texas, where he lived and worked for several months, and in Eunice, New Mexico, where he later moved. A federal grand jury indicted Mr. Rickett in November 2010 for failing to register as a sex offender as required by SORNA, in violation of 18 U.S.C. § 2250(a).

In April 2011, Mr. Rickett moved to reinstate an earlier-filed (and voluntarily withdrawn) motion to dismiss, arguing that the government failed to

allege facts sufficient to prove that he had "knowingly" failed to register as a sex offender under SORNA. The district court denied the motion on the ground that Mr. Rickett's knowledge was an issue of fact for the jury. Mr. Rickett thereafter pleaded guilty to the indictment pursuant to a conditional plea agreement. In the agreement, Mr. Rickett generally waived the right to appeal his conviction and sentence but reserved the right to appeal the district court's denial of his motion to dismiss. In August 2011, the district court sentenced Mr. Rickett to twenty-four months' imprisonment followed by five years of supervised release. After judgment was entered, Mr. Rickett timely appealed.

Before us, Mr. Rickett does not advance the arguments in his April 2011 motion to dismiss. Instead, his challenge on appeal is a new one: that 42 U.S.C. § 16913(d) is an unconstitutional delegation of legislative power to the Attorney General to determine whether SORNA is to be applied retroactively to pre-Act offenders.

## II

### A

Before reaching the merits of Mr. Rickett's claim, we turn to the question of whether Mr. Rickett waived his right to raise a facial challenge to the constitutionality of SORNA on appeal by pleading guilty to the charged conduct. First, we examine the jurisdictional effects of a guilty plea. Next, we consider whether Mr. Rickett's claim falls within the narrow class of claims that survives a

3

plea of guilty, ultimately concluding that we need not resolve this issue because the government has expressly waived its right to enforce Mr. Rickett's guilty plea or plea agreement as a bar to his appeal.

**1**

We address first whether Mr. Rickett's guilty plea deprives us of jurisdiction to hear his claim. We conclude that it does not. *See United States v. De Vaughn*, 694 F.3d 1141, 1158 (10th Cir. 2012) ("[A]n unconditional guilty plea does not deprive us of jurisdiction."), *cert. denied*, --- U.S. ----, 133 S. Ct. 2383 (2013). This is because the effect of a guilty plea is merely preclusive, not jurisdictional, and thus does not deprive us of our authority to determine whether or not Mr. Rickett's claim is barred on appeal. As we noted in *De Vaughn*:

> To say that a guilty plea forecloses independent inquiry into certain pre-plea defenses, is not to say the court has no power to decide the case. Rather, it means the defendant may only appeal on limited grounds, such as vindictive prosecution, double jeopardy, or the voluntary and intelligent nature of his plea. . . . *Determining whether a claim is in fact barred, however, is squarely within an appellate court's jurisdiction.*[1]

*Id.* at 1157 (emphasis added) (citations omitted) (internal quotation marks

---

[1] "The circuits to consider the jurisdictional effect of a guilty plea have reached different results." *De Vaughn*, 694 F.3d at 1155; *see id.* at 1155–58 (discussing circuit split). For example, the Ninth Circuit has held, as we do, that "a valid guilty plea does not deprive the court of jurisdiction." *United States v. Jacobo Castillo*, 496 F.3d 947, 949 (9th Cir. 2007) (en banc). On the other hand, the Seventh Circuit has held that an unconditional guilty plea deprives an appellate court of jurisdiction. *See United States v. Combs*, 657 F.3d 565, 569 (7th Cir. 2011) (per curiam), *cert. denied* --- U.S. ----, 132 S. Ct. 2373 (2012).

4

omitted).  Having established that Mr. Rickett's guilty plea does not deprive us of subject-matter jurisdiction, we turn now to the question of whether Mr. Rickett's guilty plea precludes us from reaching the merits of his SORNA claim.

## 2

On appeal, Mr. Rickett argues that Congress violated the Constitution's nondelegation doctrine when it allowed the Attorney General to decide if SORNA would apply retroactively to persons who committed sex offenses prior to SORNA's enactment.  However, Mr. Rickett pleaded guilty to his SORNA offense.  And he did not condition his guilty plea on the ability to raise this particular constitutional claim on appeal.  We have frequently said that "a voluntary and unconditional guilty plea waives all non-jurisdictional defenses." *Id.* at 1145 (quoting *United States v. Salazar*, 323 F.3d 852, 856 (10th Cir. 2003)) (internal quotation marks omitted); *see also United States v. Wright*, 43 F.3d 491, 494 (10th Cir. 1994) ("[A] defendant who knowingly and voluntarily pleads guilty waives all non-jurisdictional challenges to his conviction." (footnote omitted)); *see United States v. Avila*, --- F.3d ----, 2013 WL 4437610, at *2 (10th Cir. 2013).  Thus, Mr. Rickett's effectively unconditional guilty plea ordinarily would place in doubt his ability to press his constitutional nondelegation claim on appeal.

However, a narrow exception to this general rule of preclusion—known as the *Blackledge/Menna* exception—exists for two constitutional claims: "due

5

process claims for vindictive prosecution and double jeopardy claims that are evident from the face of the indictment." *See De Vaughn*, 694 F.3d at 1145–46. The *Blackledge/Menna* exception grew out of two Supreme Court decisions: *Blackledge v. Perry*, 417 U.S. 21 (1974), and *Menna v. New York*, 423 U.S. 61 (1975) (per curiam). At the heart of the *Blackledge/Menna* exception is the notion that: "Where the State [or federal government] is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." *Menna*, 423 U.S. at 62 (citing *Blackledge*, 417 U.S. at 30). Mr. Rickett now urges us to hold that "[a] claim that a statute is facially unconstitutional falls within" the *Blackledge/Menna* exception. Aplt. Opening Br. at 16 (quoting *United States v. Morgan*, 230 F.3d 1067, 1071 (8th Cir. 2000)) (internal quotation marks omitted).

We have not yet squarely addressed whether a facial challenge to the constitutionality of a statute survives a guilty plea. There is a circuit split on this issue, with the majority of circuits holding that facial challenges to the constitutionality of a statute are jurisdictional in nature and survive a valid guilty plea. *Compare United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir.) (holding that "[t]he constitutionality of . . . the statute under which defendants were convicted, is a jurisdictional issue that defendants did not waive upon pleading guilty"), *cert. denied*, --- U.S. ----, 132 S. Ct. 139 (2011); *United States v.*

6

*Phillips*, 645 F.3d 859, 863 (7th Cir. 2011) (same); *United States v. Seay*, 620 F.3d 919, 922 (8th Cir. 2010) (same); *United States v. Slone*, 411 F.3d 643, 646, 650 (6th Cir. 2005) (same); *United States v. Whited*, 311 F.3d 259, 262, 264 (3d Cir. 2002) (same); *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1006 (9th Cir. 2000) (same), *with United States v. Drew*, 200 F.3d 871, 876 (D.C. Cir. 2000) (holding that a facial challenge to the constitutionality of a statute was non-jurisdictional and waived by defendant's guilty plea); *United States v. Feliciano*, 223 F.3d 102, 125 (2d Cir. 2000) (same).

Were we to conclude that Mr. Rickett's claim implicates our subject-matter jurisdiction or one of the *Blackledge/Menna* exceptions, we would be required to hear it on appeal as such a claim cannot be waived by a guilty plea. In the alternative, if we were to conclude that Mr. Rickett's claim does not implicate our subject-matter jurisdiction or *Blackledge/Menna*, we ordinarily would deem his arguments on appeal waived and affirm his conviction.

Here, however, we find ourselves in a unique situation because the government has voluntarily and explicitly waived its right to enforce any preclusive effects of Mr. Rickett's guilty plea. *See* Aplee. Br. at 6 ("Although this Court has not addressed specifically whether a defendant may bring a facial challenge to a statute after pleading guilty to a violation of the statute, this Court's precedents suggest that Rickett did not waive his right to bring a facial challenge by his guilty plea."); *see also id.* at 13 ("Because Rickett essentially

7

argues that he pled guilty to facts that do not constitute a federal crime, the United States agrees that his guilty plea does not bar his claim.").  In light of the government's express waiver, Mr. Rickett's guilty plea does not stand as a bar to our consideration of his constitutional nondelegation challenge.  *See De Vaughn*, 694 F.3d at 1158 ("Because an unconditional guilty plea does not deprive us of jurisdiction, the Government may waive or forfeit the effect of such a plea.  The Government did so here . . . .").

Yet, pursuant to the express terms of his plea agreement, Mr. Rickett waived nearly all of his appellate rights by pleading guilty.[2]  He reserved only the right to appeal the denial of his motion to dismiss.  On appeal, however, Mr. Rickett raises an argument regarding the nondelegation doctrine that he did not make in his motion to dismiss.  Generally speaking, assuming that the plea agreement was knowingly and voluntarily entered (and that is not at issue here), a

---

[2]     As we noted in *De Vaughn*, "[a]n appellate waiver contained in a plea agreement is not quite the same thing as an unconditional guilty plea."  694 F.3d at 1155 n.10.  "The former is essentially a court-approved contract that is usually enforceable on appeal.  The latter, however, is an admission the defendant is guilty of a particular crime." *Id.* (citation omitted).  In *De Vaughn*, we dealt specifically with the issue of whether the preclusive effect of a *guilty plea* could be waived by the government.  As noted above, we answered this question in the affirmative.  *See id.* at 1156–58.  And the government in this case has explicitly waived any preclusive effect of Mr. Rickett's guilty plea.  Similarly, we have previously held that an *appellate waiver* contained in a plea agreement can be waived by the government.  *See United States v. Contreras-Ramos*, 457 F.3d 1144, 1145 (10th Cir. 2006).  Here, as we note below, the government also has declined to enforce the appellate waiver contained in Mr. Rickett's plea agreement.  *See* Aplee. Br. at 6, 13.  Thus, neither Mr. Rickett's guilty plea nor his appellate waiver bar our consideration of his claim on appeal.

defendant like Mr. Rickett would be bound by the terms of the plea agreement. *See, e.g.*, *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam). Consequently, he would not be free to present his nondelegation claim to us.

However, "[a] defendant's waiver of the right to appeal may itself be waived by the government." *Contreras-Ramos*, 457 F.3d at 1145. And, the government has explicitly waived its right to enforce the appellate waiver contained in Mr. Rickett's plea agreement. *See* Aplee. Br. at 6 ("The United States also is not pressing his appellate waiver as a bar to his claim so that the Court may decide the important question presented by Rickett's appeal."); *see also id.* at 13 ("[T]he United States is not seeking to enforce the appellate waiver in this case."). Accordingly, it is unnecessary for us to reach the question of whether Mr. Rickett's claim implicates our subject-matter jurisdiction or one of the *Blackledge/Menna* exceptions because regardless of our answer to this question, we may proceed to address the merits of Mr. Rickett's claim.[3]

---

[3]     We pause to underscore that the jurisdictional question we decline to answer is not whether we have the power to hear Mr. Rickett's claim. As articulated *supra* in Section II.A.1, we have already determined that we have subject matter jurisdiction over Mr. Rickett's appeal. *See De Vaughn*, 694 F.3d at 1158 ("[A]n unconditional guilty plea does not deprive us of jurisdiction."). Rather, the question that remains open is whether our consideration of Mr. Rickett's facial constitutional claim is compelled or discretionary. Specifically, if we were to conclude that Mr. Rickett's claim implicates our subject-matter jurisdiction or one of the *Blackledge/Menna* exceptions, we would be *compelled* to consider it, as such a claim cannot be waived. If, on the other hand, we were to conclude that Mr. Rickett's claim does not implicate our subject-matter

(continued...)

**B**

Having concluded that we may hear Mr. Rickett's claim, we proceed to address the merits of his argument. We begin with a brief discussion of SORNA and its application to Mr. Rickett. We then turn to Mr. Rickett's nondelegation argument.

**1**

SORNA took effect on July 27, 2006, with the declared purpose of "protect[ing] the public from sex offenders and offenders against children" and "establish[ing] a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901. Among other provisions, SORNA requires States to maintain sex-offender registries and requires a person convicted of one or more specified sex crimes to register therewith and keep such registration current. *See id.* §§ 16912(a), 16913(a), (c). A knowing failure to register or update a registration is punishable by up to ten years' imprisonment. *See* 18 U.S.C. § 2250(a).

By its express terms, SORNA does not apply to individuals who were convicted of sex offenses prior to July 27, 2006—so-called "pre-Act offenders."

---

[3](...continued)
jurisdiction or one of the *Blackledge/Menna* exceptions, the operative question would be one of discretion, and we would exercise our *discretion* to hear the claim because the government has declined to enforce Mr. Rickett's waiver of his claims on appeal. Thus, because all roads lead to the same place—i.e., consideration of Mr. Rickett's claim—we may save for another day the question of whether a facial challenge to the validity of a statute survives a defendant's guilty plea.

*See Reynolds v. United States*, --- U.S. ----, 132 S. Ct. 975, 984 (2012). However, SORNA vests significant regulatory authority in the Attorney General with respect to such offenders:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders . . . .

42 U.S.C. § 16913(d). As written, § 16913(d) gives the Attorney General discretion to decide whether and how SORNA should be applied retroactively. *See Reynolds*, 132 S. Ct. at 984 ("[T]he Act's registration requirements do not apply to pre-Act offenders until the Attorney General so specifies.").

On February 28, 2007, the Attorney General issued an Interim Rule specifying that "[t]he requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." Applicability of [SORNA], 72 Fed. Reg. 8894, 8897 (Feb. 28, 2007). This rule has since been finalized, *see* 28 C.F.R. § 72.3; Applicability of [SORNA], 75 Fed. Reg. 81,849 (Dec. 29, 2010).

Mr. Rickett, a pre-Act offender, is now arguing that § 16931(d) constitutes an unconstitutional delegation of authority to the Attorney General. Mr. Rickett concedes that because he failed to raise this argument before the district court—thus forfeiting it, *see Richison v. Ernest Grp., Inc.*, 634 F.3d 1123,

11

1127–28 (10th Cir. 2011)—his claim is only entitled to review under the rigorous plain-error standard, *see* Aplt. Opening Br. at 16.

**2**

To succeed under plain-error review, Mr. Rickett must demonstrate: "(1) error that is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012). For error to be "plain," it must be "clear or obvious under current law." *United States v. McGehee*, 672 F.3d 860, 876 (10th Cir. 2012) (quoting *United States v. Cooper*, 654 F.3d 1104, 1117 (10th Cir. 2011)) (internal quotation marks omitted); *see, e.g.*, *Henderson v. United States*, --- U.S. ----, 133 S. Ct. 1121, 1124–25 (2013) ("In our view, as long as the error was plain as of that later time—the time of appellate review—the error is 'plain' within the meaning of the Rule [i.e., Fed. R. Crim. P. 52(b)]."). In other words, the error must be "contrary to well-settled law." *United States v. Edgar*, 348 F.3d 867, 871 (10th Cir. 2003) (quoting *United States v. Duran*, 133 F.3d 1324, 1330 (10th Cir. 1998)) (internal quotation marks omitted). "In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *DeChristopher*, 695 F.3d at 1091 (quoting *United States v. Thornburgh*, 645 F.3d 1197, 1208 (10th Cir. 2011)) (internal quotation marks omitted).

12

Because we conclude that SORNA's purported constitutional infirmity under the nondelegation doctrine is anything but plain (i.e., clear or obvious), we may dispose of Mr. Rickett's claim on the second prong, and need not reach prongs one, three, or four. To facilitate our analysis of whether any error here is "clear" or "obvious" we begin with a brief discussion of the origin and evolution of the nondelegation doctrine. "The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989). The doctrine derives from the Constitution's opening declaration that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. Fidelity to the constitutional text and to the structure of government that the Constitution sets up "mandate[s] that Congress generally cannot delegate its legislative power to another Branch." *Mistretta*, 488 U.S. at 372. Congress may, however, vest "decisionmaking authority" in a coordinate branch so long as it provides "an intelligible principle to which the person or body authorized to [act] is directed to conform." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001) (alteration in original) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)) (internal quotation marks omitted).

Between 1789 and 1935—a period spanning 146 years of constitutional history—the Supreme Court "never struck down a challenged statute on

13

delegation grounds." *Mistretta*, 488 U.S. at 373. Then, in 1935, the Court invalidated two statutes as unconstitutional delegations of legislative power. *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 542 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388, 430 (1935); *see also* 1 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 4.8(b), at 649 n.17 (5th ed. 2012) ("The only time the Court clearly invalidated a statute for being an excessive delegation of legislative authority was 1935.").

The doctrine went dormant thereafter, and the Supreme Court has since upheld, "without deviation, Congress' ability to delegate power under broad standards." *Mistretta*, 488 U.S. at 373; *see Whitman*, 531 U.S. at 474. Indeed, so dormant is the nondelegation doctrine that some have deemed it a "dead letter." *See* Gary Lawson, *Delegation and Original Meaning*, 88 Va. L. Rev. 327, 329 (2002). Still, the Supreme Court has never expressly overruled *Schechter Poultry* or *Panama Refining*; so the doctrine, even if dead, has never received a proper burial.

Here, Mr. Rickett would have us revive the long-dormant nondelegation doctrine and hold that 42 U.S.C. § 16913(d) constitutes an unconstitutional delegation of authority to the Attorney General. However, in advancing this argument, Mr Rickett confronts an insurmountable obstacle: that is, plain-error

14

review, which does not allow for his desired outcome. If there is anything clear or obvious about the nondelegation doctrine, it is that, viewed through its lens, virtually any statute will be deemed valid. *See Whitman*, 531 U.S. at 474–75 ("[W]e have 'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law.'" (quoting *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting)); *Mistretta*, 488 U.S. at 373 n.7 ("In recent years, our application of the nondelegation doctrine principally has been limited to the interpretation of statutory texts, and, more particularly, to giving narrow constructions to statutory delegations that might otherwise be thought to be unconstitutional."); *see also Mistretta*, 488 U.S. at 415 (Scalia, J., dissenting) ("[The nondelegation doctrine] is not . . . readily enforceable by the courts."); *Nat'l Cable Television Ass'n v. United States*, 415 U.S. 352, 352–53 (1974) (Marshall, J., concurring in part, dissenting in part) (stating that the doctrine "has been virtually abandoned by the [Supreme] Court for all practical purposes").

In assessing whether any error here would be "clear" or "obvious," we note that neither the Supreme Court nor our court has ever addressed whether § 16913(d) is an unconstitutional delegation to the Attorney General.[4] For this

---

[4] In *United States v. Carel*, we observed in passing, "Th[is] court has held that § 16913—SORNA's registration provision—does not violate the . . . nondelegation

(continued...)

15

reason alone, it would be extremely difficult (if not impossible) for Mr. Rickett to establish that any error by the district court in denying his motion to dismiss was clear or obvious.  *See, e.g.*, *DeChristopher*, 695 F.3d at 1091.  Moreover, those

---

[4](...continued)
doctrine . . . ."  668 F.3d 1211, 1214 (10th Cir. 2011) (citing *United States v. Lawrance*, 548 F.3d 1329, 1333–34 (10th Cir. 2008); *United States v. Hinckley*, 550 F.3d 926, 935–40 (10th Cir. 2008), *cert. denied*, --- U.S. ----, 132 S. Ct. 2122 (2012), *abrogated on other grounds by Reynolds*, 132 S. Ct. at 980, 984).  As Mr. Rickett recognizes, the authorities that we cited in *Carel* do not validate our statement that we have rejected a nondelegation challenge to § 16913(d).  *See Lawrance*, 548 F.3d at 1331 (listing the appellant's claims and not mentioning a nondelegation challenge); *Hinckley*, 550 F.3d at 939 (declining to reach defendant's nondelegation challenge because he lacked standing to bring it).  However, *Carel* and its apparent misstatement do not alter our analysis because it is patent that *Carel*'s brief comment regarding the nondelegation doctrine—comprising slightly more than a dozen words in one sentence—was dicta; the case actually was resolved under the Necessary and Proper Clause.  *See Carel*, 668 F.3d at 1217 ("Based on Congress's authority to enact Mr. Carel's original statute of conviction (sexual abuse of a minor in Indian country) and its power to create civil penalties and regulations for persons convicted of violating that statute under the Necessary and Proper Clause, we hold that Congress did not exceed the scope of its authority by requiring Mr. Carel—a federal sex offender on supervised release—to register as a sex offender.").  "[A] panel of this Court is bound by a holding of a prior panel of this Court but is not bound by a prior panel's *dicta*."  *Bates v. Dep't of Corr. of Kan.*, 81 F.3d 1008, 1011 (10th Cir. 1996); *accord United States v. Villarreal-Ortiz*, 553 F.3d 1326, 1328 n.3 (10th Cir. 2009) (per curiam); *see also Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986) (noting that dictum "being peripheral, may not have received the full and careful consideration of the court that uttered it"), *abrogation on other grounds recognized by Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001).  *See generally* Michael Abramowicz & Maxwell Stearns, *Defining Dicta*, 57 Stan. L. Rev. 953, 1065 (2005) ("A holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) *are actually decided, (2) are based upon the facts of the case*, and (3) lead to the judgment.  If not a holding, a proposition stated in a case counts as dicta." (emphasis added)).  In sum, we consider *Carel*'s observation regarding the nondelegation doctrine to be dicta and, accordingly, it does not affect our analysis.

circuits that have considered similar nondelegation challenges to SORNA have uniformly rejected them.  *See*, *e.g.*, *United States v. Kuehl*, 706 F.3d 917, 920 (8th Cir. 2013); *United States v. Parks*, 698 F.3d 1, 7–8 (1st Cir. 2012), *cert. denied*, --- U.S. ----, 133 S. Ct. 2021 (2013); *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012); *United States v. Guzman*, 591 F.3d 83, 91–93 (2d Cir. 2010); *United States v. Whaley*, 577 F.3d 254, 263–64 (5th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1212–15 (11th Cir. 2009); *see also Kuehl*, 706 F.3d at 920 ("We agree with our sister Circuits that section 16913(d) of SORNA is a valid delegation of authority because Congress provided the Attorney General with an intelligible principle to follow." (footnote omitted) (collecting cases)); *Parks*, 698 F.3d at 8 ("All other circuits that have addressed the issue [as to SORNA] have rejected the delegation objection, which modern case law tends regularly to disfavor."); *cf. United States v. Dixon*, 551 F.3d 578, 583–84 (7th Cir. 2008) ("Likewise without merit is his argument that for Congress to delegate to an official of the executive branch the authority to fill out the contours of a statute violates the separation of powers.  It is commonplace and constitutional for Congress to delegate to executive agencies the fleshing out of criminal statutes by means of regulations."), *rev'd on other grounds sub nom.*, *Carr v. United States*,

560 U.S. 438 (2010).[5]

As even Mr. Rickett must concede, this abundant authority, which upholds SORNA in the face of nondelegation challenges, provides "strong evidence that the error is not plain." Aplt. Opening Br. at 9. When combined with the lack of controlling precedent favorable to Mr. Rickett from the Supreme Court or our court, this body of adverse authority is fatal to Mr. Rickett's claim. *See United States v. Rawlings*, 522 F.3d 403, 407 (D.C. Cir. 2008) ("Given the unanimous view of ten sister circuits and the absence of law in this Circuit, [defendant] cannot establish that the trial judge's practice constituted an error that was 'plain' or 'obvious' . . . ." (quoting *United States v. Spriggs*, 102 F.3d 1245, 1260 (D.C. Cir. 1996)).

Despite the clear weight of appellate authority against him, Mr. Rickett attempts to salvage his claim by pointing to the concurring and dissenting opinions of several jurists who have noted a potential delegation problem with § 16913(d)'s grant of authority to the Attorney General.[6] However, to render an

---

[5]     A panel of the Fourth Circuit also reached this conclusion. *See United States v. Stewart*, 461 F. App'x 349, 350–51 (4th Cir.) (per curiam), *cert. denied*, --- U.S. ----, 132 S. Ct 2446 (2012).

[6]     For example, Mr. Rickett points to Judge Gorsuch's concurring opinion in *Hinckley*—decided before the Supreme Court's decision in *Reynolds*—in which Judge Gorsuch suggested reading SORNA broadly, so that it applied to pre-Act offenders by its own terms. *See Hinckley*, 550 F.3d at 948 (Gorsuch, J., concurring). Judge Gorsuch

(continued...)

18

alleged error "clear" or "obvious," Mr. Rickett needs *controlling* Supreme Court

or Tenth Circuit precedent, or a hefty weight of *controlling* authority from other

circuits.  However, a concurring opinion only creates controlling law in limited

circumstances involving a fragmented opinion, *see Large v. Fremont Cnty.*, 670

F.3d 1133, 1141–42 (10th Cir. 2012) (discussing and applying the rule of *Marks*

*v. United States*, 430 U.S. 188 (1977), which explicates the conditions under

which concurring opinions are accorded controlling weight); *see also United*

*States v. Williams*, 468 F. App'x 899, 910 n.15 (10th Cir. 2012) ("[A]bsent a

fragmented opinion, a concurring opinion does not create law."), and Mr. Rickett

---

[6](...continued)
preferred this reading under the canon of constitutional avoidance; otherwise, he said, §
16913(d) would give the Attorney General "unfettered discretion to determine both how
and whether SORNA [is] to be retroactively applied . . . [w]ithout any discernible
principle to guide him or her in the statute." *Id.* (first alteration in original) (emphases
omitted) (quoting *United States v. Madera*, 528 F.3d 852, 858 (11th Cir. 2008)) (internal
quotation marks omitted).  Later, Judge Raggi of the Second Circuit advocated a similar
approach.  *See United States v. Fuller*, 627 F.3d 499, 510 (2d Cir. 2010) (Raggi, J.,
concurring) (reading SORNA, by its terms, to exempt pre-Act offenders because "I do not
see that Congress provided any intelligible principle in the statute to guide the Attorney
General in exercising such putative delegated legislative authority"), *vacated and
remanded*, 132 S. Ct. 1534 (2012), *for further consideration in light of Reynolds*, 132 S.
Ct. 975.  In *Reynolds* itself, Justice Scalia (joined by Justice Ginsburg) dissented,
criticizing the Court's reading as "sailing close to the wind." *Reynolds*, 132 S. Ct. at 986
(Scalia, J., dissenting).  "[I]t is not entirely clear to me," Justice Scalia averred, "that
Congress can constitutionally leave it to the Attorney General to decide—with no
statutory standard whatever governing his discretion—whether a criminal statute will or
will not apply to certain individuals." *Id.*  However, as discussed above, whatever the
persuasive value of these concurring and dissenting opinions, they do not make SORNA's
constitutional infirmity "plain" (i.e., clear or obvious).

does not suggest that those circumstances are present here. Furthermore, it goes without saying that dissenting opinions cannot be the source of controlling law. Accordingly, Mr. Rickett's reliance here on concurring and dissenting opinions is unavailing. Moreover, as noted, the uniform view of our sister circuits stands against Mr. Rickett. Thus, not only is it far from well-settled under the law of the Supreme Court and the Tenth Circuit that Mr. Rickett's nondelegation argument is legally viable, but there also is virtually no support for Mr. Rickett's position in other circuits. In sum, Mr. Rickett's claim fails under the second prong of plain-error review, and our analysis need go no further.

## III

For the foregoing reasons, we **AFFIRM** Mr. Rickett's conviction and the district court's resulting criminal judgment.

Entered for the Court

JEROME A. HOLMES
Circuit Judge